| 21 | 557 |
| 58 | 222 |
| 21 | 557 |
| 66 | 519 |
| 21 | 557 |
| 73 | 432 |

## FULLER and wife *against* THE NAUGATUCK RAILROAD COMPANY.

Where the declaration, in an action against a rail-road corporation, for a personal injury to one of the plaintiffs, after stating, that the defendants were the owners of a certain rail-road, running through the towns of $W$ and $P$, and of certain cars for the conveyance of passengers upon that road, averred, that, on the day specified, the defendants were the owners of, and were running and propelling, upon said road, a certain train of passenger cars, for a certain reasonable reward paid to the defendants; it was held, that it sufficiently appeared from the declaration, that the defendants were common carriers.

In such case, it was not necessary to allege, that the defendants had power by their charter, to become common carriers; for they being engaged in this business, and having, in its pursuit, made a contract pertaining to it, ought not to be allowed to say to the contracting party, that they had no power to do so.

Where the declaration, by husband and wife, for a personal injury to the wife, after stating the nature and extent of the injury complained of, proceeded to allege, that by means of such injury, she became sick, and was prevented from attending to her necessary affairs, and that the plaintiffs were thereby forced to, and did, necessarily expend two hundred dollars in endeavouring to effect a cure; it was held, that although the plaintiffs could not recover, in the same action, for the wife's personal injury, and also for the expenses of her cure, yet in this case, the ground of damages, was the wife's personal injury alone, and the statement regarding the expenses of her cure, was to be considered as descriptive of the extent of her injury, and not as a distinct and substantive ground of damages, and in that aspect, though unnecessary, still it was very proper; but if otherwise, yet as the *gist* of the action was the breach of contract in not carrying the wife safely, and this was a ground on which the plaintiffs could recover, it will be presumed, after verdict, that the court confined the evidence to that ground.

Where in one count of the declaration in such action, the promise was alleged as made to the *wife*, and in another, as made to the *plaintiffs*; but in the latter case, the allegation of the promise was preceded and followed

*Litchfield*,
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

by language, which shewed that the promise was made for the wife's benefit; it was held, that the fair reading of this count was, that the promise was made to her; and consequently, there was no misjoinder of counts.

A promise founded on a consideration relating to the wife's personal security, does not vest absolutely in the husband, but may be the subject of an action in the name of husband and wife.

In all cases where the cause of action will survive to the wife, she may join with her husband in a suit upon it.

The case of *Griswold* v. *Penniman*, 2 *Conn. R.* 564. considered and commented on.

Where the plaintiffs, on the trial of the action above stated, offered a witness to prove, that the wife gave money to him to buy a ticket for her passage in the cars to *P;* that such a ticket was accordingly procured for and received by her; and that she thereupon took her seat in the cars, to be conveyed to *P;* this evidence was objected to, because it went to prove, that the contract was made with the husband, on the ground, that the money paid for the ticket must be presumed to have been his; but as she might have separate property, and the money might have belonged to either of them, it was held, that the evidence was admissible, as conducing to prove the contract laid, its sufficiency being out of the question.

An implied contract will be presumed to be made with the party in interest; and as the husband has, legally, no interest in the wife's personal security, a contract for that purpose, will be presumed to be made with her.

Where the plaintiffs, on the trial of such action, claimed, that the injury alleged resulted from the car's not stopping, at the station in question, a reasonable time for the passengers to leave; which was controverted, by the defendants; and the plaintiffs offered evidence to shew the usual and customary period of the car's stopping at that place; it was held, that such evidence was admissible.

A carrier of passengers is bound to use the highest degree of care that a reasonable man would use.

THIS was an action on the case for a personal injury to *Betsey Fuller*, one of the plaintiffs.

The defendants were described in the writ, as " a body politic and corporate, created by the legislature of this state, located and doing business in *Bridgeport*, in this state, by the name of the *Naugatuck Railroad Company*, with power to sue and be sued, plead and be impleaded."

The first count alleged, That on the 12th day of *November*, 1850, the defendants were, and ever since have been, the proprietors of a certain rail-road, known and called by the name of the *Naugatuck Rail-road,* located in this state, running from the town of *Milford*, in the county of *New Haven*, to and into the town of *Winchester* in *Litchfield* county, and passing through the towns of *Waterbury* and *Plymouth,* and are the owners of divers rail-road cars for

the carriage and conveyance of passengers upon said road; and that the defendants, on the day aforesaid, were the owners of, and were running and propelling, a certain train of passenger cars upon said road, for the carriage and conveyance of passengers, for certain reasonable hire and reward paid to the defendants. The plaintiffs then averred, that upon said 12th day of *November*, 1850, in consideration that said *Betsey Fuller*, at the special instance and request of the defendants, would take a seat in one of said cars, at *Waterbury*, to be carried and conveyed therein from said town of *Waterbury* to the town of *Plymouth*, for a reasonable hire and reward, *viz.*, the sum of thirty cents, paid to the defendants therefor, by said *Betsey Fuller*, they, the defendants, undertook and faithfully promised the said *Betsey*, safely and securely to carry her, in and by said car, from said *Waterbury* to said *Plymouth*, and safely and securely deliver her, at the usual place of delivering passengers in said *Plymouth;* and the plaintiffs say, that confiding in the undertaking and promise of the defendants, she, the said *Betsey*, did on said 12th day of *November*, engage and take a seat in said car, to be conveyed from said *Waterbury*, to said *Plymouth*, and she did, then and there, pay to the defendants, said sum of thirty cents, the same being a reasonable hire or reward for the conveyance of said *Betsey* from said *Waterbury* to said *Plymouth;* and the plaintiffs say, that confiding in the promise and undertaking of the defendants, said *Betsey* did become a passenger of the defendants in said train of cars, to be conveyed from said *Waterbury* to said *Plymouth*, yet the defendants, not regarding their said promise and undertaking, but contriving and intending to injure the said *Betsey*, did not safely and securely carry and deliver the said *Betsey* out of the said cars, at the usual place of delivery of passengers at said *Plymouth*, but then and there wholly neglected and refused so to do, but instead thereof, by their servants and agents, so carelessly, negligently and unskillfully managed said train of cars, at and near the usual and common place of delivery of passengers, at said *Plymouth*, that through the carelessness, negligence and misconduct of the defendants, and their agents and servants, said *Betsey* was unable to safely and securely get out of and leave said cars, at said *Plymouth*, and the defendants then and there wholly

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Naugatuck Rail-road Co.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

neglected and refused to stop the motion of the said cars, and allow said *Betsey* a sufficient opportunity, safely and securely to leave said cars; by means of which, said *Betsey*, in endeavouring to leave said cars, fell and was thrown with great violence from said cars, and on to the earth, and on to an iron rail then and there lying, by means of which the said *Betsey* was greatly hurt, bruised, wounded and injured in her back, side, head, limbs, and divers other parts of her person, and became sick, sore, lame and disordered, and so remained from that time to the present, during all which time she has suffered great pain and distress, and by means of which she has become permanently lame and disabled, and has been hindered and prevented from performing and transacting her necessary affairs and business by her to be performed and transacted, and also, thereby they, the plaintiffs, were forced and obliged to, and did necessarily pay, lay out and expend a large sum of money, *viz.*, the sum of two hundred dollars, in and about endeavouring to be cured of the bruises, wounds, sickness, soreness, lameness and disorder, aforesaid, occasioned as aforesaid.

In the second count, it was alleged, That on the 12th day of *November*, 1850, at *Waterbury*, in *New Haven* county, in consideration that said *Betsey Fuller*, at the special instance and request of the defendants, had then and there engaged and taken a seat and place, by a certain other car, to be conveyed thereby to *Plymouth*, in *Litchfield* county aforesaid, for certain other reasonable hire and reward to the defendants in that behalf, they, the defendants, then and there, undertook and faithfully promised said *Betsey*, that due and proper care should be observed, and taken in and about the conveying and delivering her, said *Betsey*, as such passenger as aforesaid, to *Plymouth* aforesaid; and although said *Betsey*, confiding in the last-mentioned promise and undertaking of the defendants, afterwards, on the day and year aforesaid, to wit, at *Waterbury* aforesaid, did become such passenger, by the last-mentioned cars as aforesaid; yet the defendants, not regarding their last-mentioned promise and undertaking, yet contriving and fraudulently intending craftily and subtilly to deceive and defraud and injure said *Betsey*, in this behalf, did not, nor would, cause and procure due and proper care to be observed and taken in and about

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

the conveying and delivering said *Betsey*, as such passenger
as aforesaid, to *Plymouth* aforesaid, but wholly neglected so
to do ; and by reason of the carelessness and improper con-
duct of the defendants, and their agents and servants in that
behalf, in and about the conducting and managing of the
said last-mentioned car, the said *Betsey* was unable to safe-
ly and securely get out of and leave said last-mentioned
car, at *Plymouth* aforesaid ; and the plaintiffs say, that al-
though the defendants did, by their servants and agents, then
and there stop the motion of the last-mentioned car, to wit,
at and near the usual place for the landing and delivery of
passengers at *Plymouth* aforesaid, yet that they did not stop
the motion of the last-mentioned car, a proper, reasonable and
sufficient length of time to allow the said *Betsey* safely and
securely to leave and get out of said last-mentioned car,
by reason of which, said *Betsey*, while endeavouring to
leave the said last-mentioned car, fell and was thrown, with
great violence upon the earth, and upon an iron rail, then
and there lying, by means of which said *Betsey* was greatly
hurt, bruised, wounded, and injured in her head, back, side,
limbs and divers other parts of her person, and became sick,
sore, lame and disordered, and so remained from that time
to the present, during all which time, she has suffered great
pain and torment, and by means of which she, the said *Bet-
sey*, has become permanently lame and disabled, and has
been hindered and prevented from performing and transact-
ing her necessary affairs and business by her to be performed
and transacted, and also thereby they, the plaintiffs, were
forced and obliged to, and did necessarily pay, lay out and
expend another large sum of money, to wit, the sum of two
hundred dollars, in and about endeavouring to be cured of
the bruises, wounds, sickness, soreness, lameness and disor-
der aforesaid, occasioned as aforesaid.

In the third count, the plaintiffs alleged, that, heretofore,
on the day and year aforesaid, the defendants were the
owners of a certain other rail-road, known and called by the
name of the *Naugatuck Rail-road*, located in this state, and
running from the town of *Milford*, in the county of *New
Haven*, through the towns of *Derby, Seymour, Naugatuck,
Waterbury, Plymouth, Litchfield, Torrington,* to and into

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

the town of *Winchester;* and then were, and now are, the owners of divers other cars or coaches for the conveyance of passengers upon said road; and that the defendants, on the day aforesaid, were the owners and proprietors of, and were running and propelling a certain other train of passenger cars upon said road, for the conveyance of passengers, for certain other reasonable hire and reward paid to the defendants; and the plaintiffs say, that upon the 12th day of *November,* 1850, at *Waterbury* aforesaid, in consideration that the said *Betsey Fuller,* at the special instance and request of the defendants, had then and there engaged a seat and place by a certain other car, to be conveyed thereby to *Plymouth* aforesaid, for certain other reasonable hire and reward to the defendants in that behalf paid and received, they, the defendants, then and there undertook and faithfully promised the plaintiffs, that due and proper care should be observed and taken in and about the conveying and delivering her, said *Betsey,* as such passenger as aforesaid, to *Plymouth* aforesaid, and although said *Betsey,* confiding in the last-mentioned promise and undertaking of the defendants, afterwards, to wit, on the day and year last-mentioned, to wit, at *Waterbury* aforesaid, did become such passenger, by the last-mentioned car as aforesaid, yet the defendants, not regarding their last-mentioned promise and undertaking, but contriving and fraudulently intending craftily and subtilly, to deceive, and defraud, and injure said *Betsey,* in this behalf, did not, or would not, cause and procure due and proper care to be observed and taken in and about the conveying and delivering said *Betsey,* as such passenger as aforesaid, to *Plymouth* aforesaid, but wholly neglected so to do; and by reason of the carelessness and improper conduct of the defendants, and their agents and servants in that behalf, in and about the conducting and managing the last-mentioned car, said *Betsey* was unable to safely and securely get out of and leave said last-mentioned car, at said *Plymouth;* and the plaintiffs say, that although the defendants did, by their servants and agents, then and there stop the motion of the last-mentioned car, to wit, at and near the usual place for the landing and delivery of passengers at *Plymouth* aforesaid, yet that they did not stop the motion of the last-mentioned car, a proper, reasonable and

sufficient length of time to allow said *Betsey* safely and
securely to leave and get out of the said last-mentioned car;
by reason of which, said *Betsey*, while endeavouring to leave the last-mentioned car, fell and was thrown, with great violence, upon the earth, and upon an iron rail then and there lying, by means of which said *Betsey* was greatly hurt, bruised, wounded and injured in her head, back, side, limbs and divers other parts of her person, and became sick, sore, lame and disordered, and so remained from that time to the present; during all which time, she has suffered great pain and torment, and by means of which, she, said *Betsey*, has become permanently lame and disabled, and has been hindered from performing and transacting her necessary affairs and business by her to be performed and transacted : And also thereby, they, the plaintiffs, were forced and obliged to, and did, necessarily pay, lay out and expend another large sum of money, to wit, the sum of two hundred dollars, in and about endeavouring to be cured of the bruises, wounds, sickness, soreness, lameness and disorder aforesaid, occasioned as aforesaid.

The defendants pleaded the general issue; on which the cause was tried, at *Litchfield, February* term, 1852.

Upon the trial of this cause to the jury, the plaintiffs, in support of the contract set forth in their declaration, offered one *Rufus E. Munger*, as a witness, to testify, that on the day when the injury complained of occurred, *Betsey Fuller*, one of the plaintiffs, gave him some money, and requested him to purchase for her of the defendants' agent in *Waterbury*, a ticket for her passage on the defendants' rail-road car from *Waterbury* to *Plymouth;* that he received the money, purchased the ticket, and delivered it to her; and that she thereupon took her seat in the car, for the purpose of being conveyed to *Plymouth*.

To the admission of this evidence the defendants objected, because, as they claimed, it did not conduce to prove the contract set up in either count in the declaration, but one variant therefrom. But the court overruled the objection, and received the evidence.

The plaintiffs, in further support of their action, introduced evidence to prove, that upon the arrival of the car at the station for landing passengers in *Plymouth*, the defendants

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuek Rail-road
Co.

gave notice to the passengers who were to leave at that place, by their agent's calling out " *Plymouth* ;" that, thereupon, she immediately left her seat, and hastened, as fast as she could, to get off the car ; but before she was able to leave the same, she was thrown, by the rapid motion of the car, upon the ground, and severely bruised and injured ; that the defendants' train was either not stopped at all, at said station, or if stopped, it was but for a very short time, and then again put in motion, without allowing her any reasonable or sufficient time for her to leave the car.

It was proved, and admitted by the defendants, that upon the arrival of the train at the *Plymouth* station, notice was given to the passengers to leave, by the defendants' agent ; that before the said *Betsey* had left the car, the defendants' conductor had given an order for the train to proceed, and the same was in actual motion ; and that the injury complained of was occasioned thereby.   But there was no evidence that said conductor, when he gave said order, had any knowledge that said *Betsey* had not left the car.

The defendants introduced evidence to prove, that their train was stopped at said station, and remained stationary, for a suitable and proper period of time, and sufficiently long to enable her to leave the car safely and conveniently, after due notice had been given to her ; but that instead of leaving the car in a reasonable time, she remained therein an unreasonable period of time, and until after the train had resumed its progress, and that known to her ; that when she was about getting off the car, she was informed by the superintendent of the road, that the train was moving, and that it would be dangerous for her then to leave, and if she would remain, he would stop the train.   But it was denied by the plaintiffs, that any such information was communicated to her.

The plaintiffs offered evidence to prove what was the usual and customary period of time, allowed by the defendants for passengers to leave at that station.   To the admission of which the defendants objected, but the court admitted it.

The defendants requested the court to charge the jury as follows, to wit :

1.  That if they found that the train was stopped the *usual*

time of stopping, at the station, or long enough to enable Mrs. *Fuller*, by the use of reasonable expedition and care, to get off the car with safety, and she did not improve that opportunity, and get off, the defendants were not responsible for the injury.

*Litchfield,*
*June, 1852.*

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

2. That if the jury found, that the train was stopped, after notice to the passengers to leave, the usual time, or long enough to enable Mrs. *Fuller*, in the use of reasonable expedition and care, to get off safely, and she did not get off then, the defendants are not liable for any injury occurring afterwards, provided the jury believe, that the conductor, at the time he started the train, *bona fide* supposed, that the passengers who desired to leave, had all left the cars.

3. That if the jury found, that at the time Mrs. *Fuller* left the car, the train was in motion, so as to render it unsafe for her to leave it, and she knew it, or by the use of reasonable and ordinary care, might have known it, and yet went off, the defendants are not liable, whether the train was stopped or not, at that station.

4. That the degree of care which the defendants, as common carriers of passengers, were bound to exercise in affording to Mrs. *Fuller* an opportunity to get off with safety, was not the highest degree of care attainable by human skill and foresight, but only that reasonable care which a prudent man usually exercises upon such occasions.

The court, in its charge to the jury, informed them, that common carriers of passengers are not insurers of their safety; but they are bound to observe the highest degree of care in carrying them, which a reasonable man would use. Their contract is, that they will carry them safely, and as far as competent skill and human foresight will go, they will take due care in the performance of their duty.

That the plaintiffs, in the case under consideration, cannot recover, if the injury is, in any manner, attributable to the want of ordinary care and diligence on the part of Mrs. *Fuller*, in leaving the car: such a degree of care and diligence as it was incumbent upon her to observe, under the circumstances in which she was placed; such as might reasonably have been expected from a person in her situation.

It was her duty, upon the arrival of the car at the station and notice given to the passengers to leave, to use all rea-

<div style="margin-left:...">

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Nauga
tuck Rail-road
Co.

</div>

sonable diligence and care to leave the car; and if she omitted to do it, the defendants are not liable.

So, if she imprudently and improperly attempted to leave the car, under such circumstances as showed a want of reasonable care and caution on her part, the defendants are not responsible.

The court then submitted the case to the jury, for them to say, from the evidence before them, whether the injury was justly attributable to the want of due diligence, care, or caution on the part of Mrs. *Fuller,* or to the neglect of the defendants in not allowing her a reasonable time to leave the car, in the manner claimed by the plaintiffs.

The jury returned a verdict in favour of the plaintiffs, with one thousand dollars damages.

The defendants thereupon moved in arrest of judgment, for the insufficiency of the declaration. They also moved for a new trial, because the court admitted improper evidence offered by the plaintiffs, and for a misdirection to the jury.

*J. H. Hubbard* and *Buel,* (with whom was *Giddings,*) in support of the motions, contended, 1. That the corporate powers of the company are not sufficiently set forth in the declaration. *Goshen & Sharon Turnpike Co.* v. *Sears,* 7 *Conn. R.* 92. The plaintiffs should have shown, that the *defendants,* a *corporation,* had power to become *carriers.* Common carriers are those whose *usual* business is, to carry. 1 *Sw. Dig.* 388. (*Dut.* ed.) The defendants are not *so* charged.

2. That in all the counts, damages are claimed on account of the expenses of carrying the wife, which is error. 1 *Chitt. Pl.* 61. *Barnes* & ux. v. *Hurd,* 11 *Mass. R.* 59.

3. That there is a misjoinder of causes of action. The first and second counts are on a *contract with the wife alone;* the third, with the *plaintiffs, i. e.* with *husband and wife.* That is also fatal. *Gould* on *Plead.* 219. *Bocrum* v. *Taylor,* 19 *Conn. R.* 122. 126.

4. That the wife should not have joined at all; for, in the first place, this action "sounds in *contract.*" See 2 *Chitt. Pl.* 117. 118. 271. 272. *Corbett* v. *Packington,* 6 *B. & Cres.* 268. (13 *E. C. L.* 170.) Secondly, the contract arose *upon the purchase* of the ticket. The price was paid

with the husband's money, and the contract was with *him*. *Buckley* v. *Collier*, 1 *Salk.* 114. *S. C.* 3 *Salk.* 63. *Bidgood* v. *Way* & ux. 2 *Bla. R.* 1236. 1 *Bright* on *Husband & Wife*, 63.

5. That in this action, the wife's *right to sue* is not shown, and cannot be *intended*. 1 *Chitt. Pl.* 21. *Gaylord* v. *Payne*, 4 *Conn. R.* 190. In an action sounding in *tort*, it is admitted she might join.

6. That the evidence offered by the plaintiffs, and admitted by the court, was inadmissible. And on this point, it is immaterial whether the action sounds in tort or in contract. *Maine* v. *Bailey*, 15 *Conn. R.* 298. *Weall* v. *King*, 12 *East*, 452. The contract is laid with the wife, in the first and second counts, and with the *plaintiffs*, in the third count. The evidence offered conduces to prove a contract with the *husband* alone. See 2 *Greenl. Ev.* § 209. 212. 1 *Chitt. Pl.* 295. 9. 304. Here no *express* contract was made with *any* one. The law *implies* the contract with the party from whom the *consideration* proceeds; and in this case, the *husband* paid for the ticket.

7. That the *usual* and *customary* length of the stop at *Plymouth*, was immaterial. What that *usual* and *customary* time was, was *not in issue*. First, the defendants were not charged with stopping less than *that time;* and so had no notice to contest that point. Secondly, whatever it was, it could not affect the rights of the plaintiffs, nor the duties of the defendants.

8. That the charge required too high a degree of care of the defendants, "as far as competent skill and *human foresight will go*," is *too* far to require. The ground of liability is *negligence;* but if the "highest degree of care which a reasonable man would use," as shown by the usual practice of prudent, reasonable men, under such circumstances, then there can be no just charge of negligence. See *Derwort* & ux. v. *Loomer*, 21 *Conn. R.* 253. And yet "competent skill and human foresight *will go*" far *beyond* that: so far as to give twice or thrice the necessary time for leaving the cars—giving notice twice instead of once—passing through the cars, and personally arousing the sleepers, &c.

9. That the court should have told the jury, that attempt-

*Litchfield,* June, 1852.

Fuller & ux. *v.* The Naugatuck Rail-road Co.

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

ing to leave, while the cars were in motion, was necessarily hazardous, instead of leaving this matter to the jury.

*Sanford* and *Woodruff,* (with whom was *E. Johnson,*) contra, contended, 1. That there was no necessity of alleging, that the defendant was a common carrier of passengers, *eo nomine*—it is sufficient to allege the ownership of the road and cars, and the use of the same, for carrying passengers for hire and reward, which makes them in law common carriers, and so are all the forms. 2 *Chitt. Pl.* 119. 2 *Greenl. Ev.* § 221. n. *Angell on Carriers,* § 592. n. 2. Besides, if the character of the defendant, as a common carrier of passengers, were not alleged with legal accuracy, the defect would be cured by the verdict. 1 *Chitt. Pl.* 673 to 682. (9th *Amer.* ed.)

2. That the action is brought to recover damages for a personal injury to the wife, and the allegation of expenses incurred, &c., at the conclusion of each count, is mere matter of description of the extent of the injury, and not a substantive ground of claim for damages : it is therefore surplusage, and good, after verdict. *Richards* v. *Farnham,* 13 *Pick.* 45. *Lewis* v. *Babcock,* 18 *Johns. R.* 443. So long as it does not appear that any evidence was offered to prove such expenses, or any claim made for them, on the trial, or that the jury have taken them into consideration, it will be presumed, *after verdict,* that no such claim was made, or evidence offered. *Dale* v. *Dean,* 16 *Conn. R.* 579. 1 *Sw. Dig.* 776, 7. So where a plaintiff claims more damages than on the face of the declaration appear to be due, it will not vitiate, especially after verdict. 1 *Chitt. Pl.* 682. *Van Rensselaer* v. *Platner,* 2 *Johns. Ca.* 18.

3. That though the promise in the third count, is alleged to the "*plaintiffs,*" in the plural, it is, in the first place, very clearly, a clerical error; for it is apparent, that the words "the plaintiffs," refer to *Betsey Fuller,* by what precedes and follows. Secondly, if the promise was made to the plaintiffs jointly, for the benefit of the wife, and for her personal safety, in an action for breach of that undertaking, to recover damages for *an injury to the wife,* may not a count, upon a promise to husband and wife, be joined with a count upon a promise to the wife alone, both being for the same

cause of action? Thirdly, as the same plea may be plead-
ed, and the same judgment rendered, and it appears that the
personal safety of the wife alone was involved, there can be
no objection to the joinder of the counts. Fourthly, it is
apparent, that all the causes of action stated in the several
counts, are for the same identical injury; and as the defend-
ant has not, and could not, sustain any injury, by the form
of the averments, as varied, he cannot have a new trial.

4. That as the several counts are the same in form and
substance, and for the same cause of action, and there is no
misjoinder; if either count is good, the verdict will apply to
that count. *Wolcott* v. *Coleman*, 2 *Conn. R.* 324. *Smith*
v. *Cleveland*, 6 *Metc.* 332.

The counts are all in the forms laid down as good decla-
rations against carriers *in assumpsit.* 2 *Chitt. Pl.* 119. 2
*Greenl. Ev.* § 221. n. *Angell* on *Carriers,* § 592. n. 2.

5. That the evidence of *Munger* was properly admitted,
because it conduced to prove, and did prove, the contract set
up in the declaration. In the first place, he was the *mere
agent* of *Betsey Fuller*, to purchase the ticket for her; and
all the legal consequences followed from the purchase by him,
that would, had she bought it in person. Secondly, from
the sale of the ticket, by the defendants, to *Betsey Fuller*,
and her taking a seat in the car, the law raises and implies
the contract set up in the declaration. Thirdly, if no mon-
ey had been paid at all—if they received her on board their
cars—the law raises and implies the same contract.

6. That the evidence offered to prove the customary time
of stopping at *Plymouth*, was properly admitted. It was
necessary, in order to show the jury, that, at the time in
question, they did not stop the usual time, and did not fur-
nish the usual facilities for leaving the car, and so broke
their engagement.

7. That the charge is all *good law* and *right*, and left the
questions of fact on all the claims of the defendants to the
jury to find; and they have found against them, on every
one.

HINMAN, J. The defendants in this case, after verdict for
the plaintiffs, move in arrest of judgment, on the ground of

Margin note:

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

*Litchfield,*
*June,* 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

the insufficiency of the declaration. The objections to the declaration are, that it does not state, that the defendants are carriers, or, that they had power, by their charter, to become common carriers; that the several counts each join a claim for damages on account of the wife's personal injury, with a claim for the expenses of her cure; that, in the two first counts, the promise is alleged to have been made to the wife, and in the third count, it is alleged to have been made to both husband and wife; that a valid promise cannot be made to a married woman, and she cannot sue in *assumpsit*, for any claim originating after coverture; and, lastly, it is said, the first count is in *assumpsit*, on the promise, and the two last counts are founded on the negligence of the defendants, and so are counts sounding in tort.

These several claims will be considered in their order.

First, does the declaration allege, that the defendants are common carriers, or carriers of passengers, or, that they have power, by their charter, to become carriers? We think it does. After stating that the defendants were the owners of a certain rail-road, running through the towns of *Waterbury* and *Plymouth*, and of certain cars for the conveyance of passengers upon said road, it then goes on to say, "And the defendants, on the day aforesaid, were the owners and proprietors of, and were running and propelling, a certain train of passenger cars upon said road, for the carriage and conveyance of passengers, for a certain reasonable reward paid to the defendants." Now, a common carrier is one whose usual business it is, to carry; and the substance of these allegations is, that the defendants owned all the property and implements, usually employed by carriers of a certain description—railroad companies—and that they were, at the time, engaged in the use of this property, for the conveyance of passengers. We think this is enough, without a statement of the length of time the defendants had been engaged in the business, or any direct and positive allegation, that they were common carriers. In this respect, the counts conform to the precedents found in *Chitty*, or, if they differ from them, are rather more precise than those precedents.

It was not necessary to allege, that the defendants had power, by their charter, to become common carriers. They are alleged to be a rail-road corporation, owning cars, and

engaged in running them on their road, for the conveyance *Litchfield,* of passengers. If this is true, it follows, that, so far as third persons are concerned, they must be presumed to have authority to do the business they hold themselves out as competent to do. They will not be presumed to be engaged in an unlawful business; and, being engaged in this business, and, in its pursuit, having made with the plaintiffs the contract declared on, they ought not now to be heard to say, they had no power to do so.

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Naugatuck Rail-road
Co.

2. It is claimed, that the declaration asks for damages on account of the wife's personal injury, and also for the expenses of her cure.

Each of the counts, after stating the wife's personal injury, and the extent of it, then goes on to say, that, by means of the injury, she became sick, was prevented from attending to her necessary affairs, " and also thereby, they, the said plaintiffs, were forced and obliged to, and did, necessarily pay, lay out, and expend, a large sum of money, to wit, the sum of two hundred dollars, in and about endeavouring to be cured of the bruises, &c."

It is clear, that the plaintiffs could not recover for the wife's personal injury, and also for the expenses of her cure, in the same action. On the former ground of damages, the husband would have no interest, while the latter, would accrue to him alone; and so the two claims would be incompatible with each other. But we do not think this declaration open to that objection. Indeed, it may fairly be doubted, whether it was framed with that object in view. The ground of the action was the wife's personal injury alone: otherwise, she could not have been made a party at all; and, we think, the statement in regard to the expenses of her cure, may well enough be considered as descriptive of the extent of her injury, rather than as a distinct and substantive ground of damages—as saying, in substance, that she was so hurt, that it had already cost two hundred dollars to cure her. In this aspect, the allegation, though unnecessary, is still very proper.

But suppose the pleader intended it, as a distinct ground of recovery, and that it is so expressed as to bear that construction only, still we think it clear, that it does not vitiate the declaration. In every instance, this claim is inserted as

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

matter of aggravation, and not, as of itself, constituting a ground of recovery. The gist of the action is the breach of contract in not carrying the wife safely. It is stated, as one consequence of that, that the plaintiffs were obliged to expend money in paying for medical attendance. For *that* the plaintiffs cannot recover; and if that was the sole ground of damages, it would be fatal to their case. But as there was a ground of damages for which they could recover, it will be presumed, that the court allowed no proof to be given of any ground on which they could not, although stated in the declaration.

3. It is said, there is a misjoinder of counts in the declaration; the promise in the two first counts being laid as made to the wife, and in the third, as made to the plaintiffs. It is true, the third count uses the plural word "plaintiffs," when stating the person to whom the promise was made; but it is preceded and followed by language which shows, that the wife only was meant. Immediately preceding the allegation of the promise, it is stated, that " in consideration that the said *Betsey Fuller,* at the special instance and request of the defendants, had then and there engaged a seat and place, by a certain other car, to be carried and conveyed thereby to *Plymouth* aforesaid, for certain other reasonable hire and reward to the said defendants in that behalf paid and received, they, the said defendants, then and there undertook," &c., that due and proper care should be observed in and about the carrying, conveying, and delivering *her the said Betsey,* as such passenger as aforesaid;" and then it goes on to say, that the *said Betsey*, confiding in said promise, became such passenger. It was, then, the wife that engaged the seat, and paid for her passage; and it was for her benefit that the promise was made. We think, therefore, the fair reading of the count is, that the promise was made to her, although its language, if not restrained by the whole frame of the count, would include both plaintiffs.

4. It is claimed, that a married woman cannot sue in *assumpsit*, on a contract made subsequent to the coverture; on the ground, that all choses in action accruing to her, vest, absolutely, in the husband; and, under some of our decisions, this is the most material question in the case. It is said, the husband paid for her passage, and therefore, the prom-

ise must be presumed to have been made to him. This is contrary to the express allegation in the declaration, in which it is explicitly alleged, that she paid for her passage. But then it is insisted, that as husband and wife are one person in law, the money that she actually paid, must be presumed to have been his, and so the consideration of the promise moved from him.   As a wife, however, may have separate estate, over which the husband can have no controul ; and may make contracts, which will bind her estate only, and not the husband's, it is obvious, that her paying money out of such separate estate could raise no promise in the husband's favour, founded upon the idea, that the consideration moved from him.   As then, the money which she paid on this occasion, might have been her separate property, we should be bound, after verdict, on a declaration, alleging that she paid the consideration for the promise, and that the promise was made to her, for her benefit, to presume the facts to be as alleged, if it were necessary to do so, in order to sustain the verdict.   But we do not place the case on this narrow ground ; for although there are expressions used by our judges, in some cases, which seem to sanction the notion, that all choses in action accruing to the wife during coverture, vest absolutely in the husband ; yet the cases in which this point is supposed to have been decided, are all of them distinguishable from this case.   None of them arose on promises or obligations relating to the wife's personal security.   They were all mere money claims, for liquidated debts ; and some of them were cases where the contest was between the wife, or her representatives, and the husband's creditors.   Indeed, it is not improbable, that the inclination our courts have always felt, to subject all a debtor's property to the payment of his debts, and to guard against any possible evasion of this liability, may have led to our peculiar decisions on this point.   However this may be, the principle, which our courts have established on this subject, is undoubtedly a departure from the common law, and ought not to be extended so as to operate unjustly.   The rule of law is, that in all cases where the cause of action will survive to the wife, she may join with her husband in a suit upon it.   This rule has not been affected by the cases to which we refer. Its application has been narrowed, by leaving the cases in

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Naugatuck Rail-road
Co.

*Litchfield,*
June, 1852.
————————
Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.
which the cause of action will survive less in number, but
the rule remains as before. If, then, the cause of action
would survive to the wife, in this case, it must follow, that
she may join her husband in a suit upon it. Now, the de-
fendants admit, that an action on the case, for their neglect
of duty, in not carrying the woman safely, might be sustained
by her.

The question, then, is narrowed down to this—whether
our decisions have so far destroyed the identity of the wife,
as that a binding promise cannot be made to her for any
purpose—not even for her personal security. Now, what-
ever may be said of the result to which the reasoning of
some of our judges leads, we have no idea, that they intend-
ed to sanction any such doctrine. The truth seems to be,
that our late cases on this subject, rest on the authority of
*Griswold* v. *Penñiman,* 2 *Conn. R.* 564 ; and that case rests
upon the notion, that, because a husband may sue alone, on
most choses in action, accruing to the wife during coverture,
they vest absolutely in him. This, says Judge *Swift,* "clear-
ly proves, that they vest in him absolutely." Previous to
the case of *Griswold* v. *Penniman,* our court of errors had
decided, that an agreement between husband and wife was
absolutely void, unless it was made through the intervention
of a trustee. *Hutton* v. *Dibble,* 1 *Day,* 221. *Nichols* v.
*Palmer,* 5 *Day,* 47.

This doctrine, carried out, would, perhaps, sustain the
case of *Griswold* v. *Penniman.* The common law doctrine,
that a husband may sue alone, or join his wife, on choses in
action, accruing to her, during coverture, is founded upon
the principle, that he has his election not to reduce such
choses in action to possession ; and the courts, at that day,
might have considered such an election, to be a void agree-
ment, under the case of *Dibble* v. *Hutton.* However this
may be, it is clear, that Judge *Swift's* principle does not
apply to a case like this. The converse of the ground of
that decision is true here. For the personal injury of the
wife, the husband never could sue alone. He has no direct
interest in that—none whatever, unless in consequence of
it, he loses her society and service. For *that* he might sue ;
but not for the pain she suffers. If, then, it is true, that his
right to sue alone, proves, that certain choses in action vest

absolutely in him, it must follow, that in cases where he has no such right, they do not vest in him; and this being a case of this description, it must follow, that the suit was correctly brought in the name of the wife.

*Litchfield*,
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

The point stated in the motion, that the first count was laid in *assumpsit*, and the other counts in *tort*, has not been insisted upon in argument. We presume it was intentionally abandoned; as the counts all seem to have been taken from established precedents in *Chitty*, of forms given under the head of *assumpsit*.

Under the motion for a new trial, it is claimed, that the judge erred, in admitting evidence to prove, that the wife gave money to a witness to buy a ticket for her passage in the cars; that such a ticket was procured, which she took, and also took her seat in the cars, to be conveyed to *Plymouth*. It is said, this evidence went to prove, that the contract was made with the husband; on the ground, that the money she paid for the ticket, must be presumed to have been his. This might be a plausible claim, if it was not possible for a married woman to have separate property; but as she may have such property, it is obvious, the money might have belonged to either of them, and there might have been other evidence, showing to which it did in fact belong. The objection is, that it did not *conduce* to prove the contract. We think it did; whether it was sufficient for the purpose, we are not called upon to decide.

Again it is said, that no express contract was made with any one; and that the law will imply a contract only with the husband, because he paid for the ticket. We have already seen, that it does not appear who paid for the ticket, unless the fact, that the money came from her hand, is presumptive evidence, that it belonged to her. We do not think there is any presumption that it was his alone. Besides, it does not appear, whether the promise was expressed or implied. The motion does not profess to report the whole evidence in the case; and so far from presuming the contract was an implied one, we should be bound, rather, to presume that it was express, if it were necessary to do so, in order to sustain the verdict. These reasons are sufficient to dispose of this claim; but it ought not to be understood, that we intend to sanction the notion, that the law will imply a con-

*Litchfield,*
June, 1852.

Fuller & ux.
*v.*
The Nauga-
tuck Rail-road
Co.

tract only with the party who pays the money, in such a case as this. It would seem more reasonable to suppose, that the implied contract, whatever it might be, would be with the party in interest in it. If it was a contract to pay for the wife's labour, it would generally be to the husband, because he alone is interested in it; but if for her personal security, it must be to her, if any one, because he has no interest in that. But it is not necessary to pursue the subject further.

The injury for which the action was brought, occurred at the station, or usual stopping place, at *Plymouth*; and the plaintiffs claimed, it was in consequence of the cars not stopping the usual time, or long enough to give the passengers for that place a reasonable opportunity to leave. Under this claim, the plaintiffs gave evidence of the usual and customary period of the cars stopping at that place; and it was claimed, that such evidence was irrelevant, and ought not to have been received. We think it was proper, for the purpose of showing what the defendants had considered a reasonable time, to be allowed the passengers to leave, at that station; and, if the time allowed for that purpose, on this occasion, was shorter than the usual and customary time, it would tend somewhat to show, that a reasonable time was not allowed. The evidence probably was not very important; but we cannot say, that it was improper.

The remaining question arises upon the charge of the court. It is said, that it requires too high a degree of care in the defendants. But the rule laid down by the judge, was the one adopted by this court, in *Hall* v. *The Connecticut River Steamboat Company*, 13 *Conn. R.* 319; and has been acted upon ever since. It is too well settled to require reëxamination.

Upon the whole case, then, the motion in arrest is advised to be overruled, and no new trial is advised.

In this opinion the other judges concurred, except WAITE, J., who was disqualified under the statute of 1852, *c.* 24. § 4.

Motion in arrest overruled;
New trial denied.