JONES & RICHARDSON *v.* THE WESTERN VERMONT RAILROAD
COMPANY,—TRUMAN ESTES *v.* SAME,—HIRAM RICHARDSON
*v.* SAME, AND EDWARD M. WELLING *v.* SAME.

*Liability of corporations for the acts of their agents within the
apparent scope of their authority.    Waiver.*

A corporation is liable even for torts committed by its agents within the apparent scope of
their authority, or in the pursuit of the general purpose of the charter, *i. e.*, when the
departure from the charter powers is not such as to be notice to all, that the agent is
departing from the proper work of the corporation.

Application of this principle to the construction of a railroad track in such a manner as to
contribute to other objects.

A conveyance of the land which will be overflowed, and which is made for the purpose of
enabling the grantee to erect a dam, will not be a waiver of the grantor's right to, or pre-
vent his recovering such damages as he may sustain upon his premises below the dam on
account of its defective construction.

THESE were actions of trespass on the case, brought for so igno-
rantly, negligently, carelessly, and unskilfully building or causing
to be built and constructed, across a stream of water called Paran
Creek, in the town of Bennington, whereon was situated certain
buildings and property belonging to the plaintiffs, a dam, whereon
a track for a railroad might be laid, that on the 11th day of Feb-
ruary, 1852, said dam burst and broke away, and the water, with
great force and violence, rushed down the natural course and chan-
nel of the stream, and in its course tore and swept away a dam
belonging to the plaintiffs; and carried away and destroyed the
factories, buildings, wood-houses, sheds, wood, tools and other pro-
perty belonging to the plaintiffs.

The cases were, by the consent of the parties, all referred to the
same board of referees, who reported the amount of damages sus-
tained by each of the plaintiffs, together with the facts, which were
substantially the same in each of the cases, and were as follows :
Phineas L. Robinson was the owner of a mill on Paran Creek,
which was supplied with water by a canal from a dam and reser-
voir on said creek, at some distance above the mill.    The plaintiffs
owned dams, mills and other property on said creek, below said
Robinson's mill.    The defendants located their railroad across said
creek, above said Robinson's mill and below his dam, and, again

crossing said creek at or near his reservoir, had settled their plan to pass said creek above his mill, by an embankment of about twenty feet above the intervale, with a stone culvert therein, for said creek to pass through, and proposed taking his said reservoir, and destroying the same in making said road. This would have greatly injured said Robinson. It was then agreed between said Robinson and the defendants' chief engineer, who had charge of the construction of their road, that, instead of paying said Robinson for said reservoir, the road across said creek, above his mill, should have no culvert for said creek in said embankment, but should be made solid, so as to hold the water of said creek, and form a reservoir of water eight feet higher than the said canal of said Robinson, where it then passed, and the water above that to pass off by a waste weir in said bank, and so form a reservoir to furnish water to his mill, provided the land to be flowed by water, by so erecting said embankment, was furnished without cost to the defendants; and that if the said change in the mode of erection cost more than the former mode, said overcost was to be applied in payment of other land damages, which had been awarded said Robinson, against the defendants. The making said road in this manner, if well done, would have been less expensive than with the culvert.

Edward M. Welling, the plaintiff in one of the suits, was the owner of the land to be flowed by the making of said embankment, and said Robinson applied to him, and he, considering he would be benefited in his said mill and water privilege below, by the making of said embankment, so as to form a reservoir, agreed to deed said land, being about forty acres, for thirty dollars per acre, and if said embankment and reservoir were so constructed, to make a deduction on said price of ten dollars per acre, and he gave his bond to Robinson so to do. Thereupon the said engineer made said change in the mode of constructing said embankment, and the defendants' directors approved of the same. The said engineer proceeded in the construction of said embankment accordingly, but before the same was completed, the said engineer left the defendants' employment, and the said Robinson, who had been appointed a director by the defendants, proceeded by order of the defendants' board of directors, to superintend and direct the com-

pleting of the same with their workmen and funds; and he took of the said Welling his deed of said land, and paid said Welling eight hundred dollars, being twenty dollars per acre.

The said embankment was not made with ordinary prudence, and was insufficient to retain the water, and for that cause was washed away, and occasioned to said plaintiffs, to their dams, mills &c. below, the amount of damage reported.

The several plaintiffs were informed of the proposed change in the plan of making said embankment, and saw the work from time to time in its progress, and made no objection to said plan, but gave no directions, and made no agreement or contract in relation thereto; they did, before the completion of the work, strongly and decidedly object, to said Robinson, as to the manner in which said work was executed, and the insufficiency of the same.

The county court, December Term, 1854,—PIERPOINT, J., presiding,—accepted the reports, and rendered judgments thereon for the plaintiffs. Exceptions by the defendants.

*H. Canfield* for the defendants.

*Robinson & Sibley, J. L. Stark, D. Roberts* and *N. B. Hall* for the plaintiffs.

The opinion of the court was delivered by

REDFIELD, CH. J. The important question in these cases respects the authority of the corporation under their charter. It does not seem to be questioned, that such a corporation is liable for torts even, when committed by their agents, within the apparent scope of their authority, or in the pursuit of the general purpose of the charter. In other words, when the departure from the charter powers is not such, as to be notice to all, that the agent is departing from the proper work of the corporation, they are liable for such acts of their agent.

To apply this reasoning to the present cases, if this transaction is fairly to be regarded as the building of a mill-dam, or reservoir, for the convenience of the water power, there in use, and the laying the track of the railroad upon the erection, as something incidental merely, to the general purpose of the erection, then, undoubtedly, the corporation is not liable.

27

But if the erection is primarily for the purpose of making a track for the railroad, and the advantage to mill owners, by means of reserving the water for future use, a mere incident, and dependent only upon slight, and not expensive, departures from the ordinary mode of constructing such erections for the benefit of the railroad merely, we think the defendants are liable. It would seem, from the report of the referees, that the expense was not thereby increased to the company, so that no question arises on that ground. It appears to have been a necessary erection for the building of the road, so that no one, who might have deemed himself thereby endangered, could have hindered the defendants in making the erection; or probably have obtained any legal process of stay, by means of injunction; so that the erection would seem *prima facie* within the charter powers given to the defendants. It does not then occur to us how the defendants can escape liability, unless it be either upon the ground of the motive, or the mode of making the structure.

1. As to the mode of making their road bed, it must be considered, we think, that railroads, in this state, certainly, have a very great and almost unlimited latitude. The restrictions upon them, either in their charters, or by the general laws of the state, are very few, and very general. It would seem, therefore, that this latitude of authority, as to the mode of making erections and excavations for their road-bed, should carry a corresponding extension of obligation. And if so, there is no doubt the mode of construction is one which comes within the fair and reasonable extent of the powers of the corporation, and one which they had the right to adopt, and that they are liable for the manner of completing the structure.

In regard to all the plaintiffs' but Welling, they had no privity whatever in the transaction, and no implied assent can be claimed on their part. If this embankment had been constructed with a culvert, too small or insufficiently built, and the damage had resulted from such faulty construction, there could be no doubt of the right of the plaintiffs to recover, upon general principles. And it seems to us, it can make no difference, that the agents of the corporation deemed it expedient and safe, to build it, with a waste weir, instead of a culvert. No one, we suppose, would come to

any such conclusion, had it not been for the motive and purpose of the departure from the ordinary mode of construction.

2. And the motive, purpose, or object of this mode of building the embankment, so far as it proposed merely to restore the then existing reservoir to its former usefulness, and not to improve it, so as thereby to gain an advantage to defendants by lessening land damages, in a mode not pointed out in the charter or general statutes, no one would contend, was not strictly allowable. Indeed to that extent it was one of the prescribed duties of the corporation, in passing streams, and equally in passing ponds, or reservoirs, as we judge. The difficulty, then, seems to arise, from the attempt to unite the embankment with the reservoir, so as thereby to produce a positive improvement to the water power.

And it must be confessed, that this part of the case is one which requires to be reviewed with some caution. But it seems to us a question chiefly between the stockholders and the corporation. So far as the agents, for constructing the road-bed, departed from the main object in hand, they were, of course, assuming responsibilities not imposed by the charter, and not necessary to the accomplishment of the purpose of its creation, and such departure is always liable to enhance the losses, in a ratio altogether beyond the profits thereby arising, and so to prove a source of ultimate loss to the corporators. Upon this ground very probably, the corporation might have interfered, by way of injunction.

But where the departure is slight and incidental merely, and not such as to give notice to those interested, that such agents are departing from the appropriate business of the corporation, it is just and reasonable, that the corporation should be held liable, at all events to strangers, and so equally in a more essential departure, unless they take steps to arrest the work *in limine*. And this is chiefly upon the ground that the corporators have acquiesced in such construction of the charter powers, and that they should, therefore, be bound by it. But in regard to strangers, who have neither the means of knowing, or the right to interfere in every case of departure from the strict charter powers, the case is different. In such case the corporation is liable, unless the departure is marked and obvious, and sufficient to justify resistance to the progress of the work, in some way, even on the part of strangers.

This does not seem to have been such a departure, and we think the defendants liable for the defects in the work, and the consequent damages to the plaintiffs.

And it does not seem to us that the case of Welling is to be distinguished, in principle, from the others. It might have been true, that had he refused to part with his land the corporation could not have taken it for this purpose, (or they might,) but he, in no sense, became responsible for the mode in which this embankment was built. His consenting to suffer his land to be flowed, no more binds him to the defective mode of construction, than if he had refused all leave whatever. In such case the defendants might have flowed the land and would have been liable therefor, and possibly thereby made the embankment a nuisance if it seriously affected the health, or deprived, as it would, the land owners of the use of their property; but waiving this claim would not, we think, amount to any implied waiver of his claim for damages for the misconstruction of the work. Judgments affirmed.